IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GERALDINE MASSEY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. H-07-4056 |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document Nos. 13 & 14) and Plaintiff's cross Motion for Summary Judgment (Document No. 15).[1] Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

### I.  Introduction

Plaintiff Geraldine Massey ("Massey") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") reducing her Supplemental Security Income ("SSI") benefits. Massey argues that substantial evidence does not

---

[1] On February 11, 2008, pursuant to the parties' consent, the District Judge transferred this case to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 11.

support the Administrative Law Judge's ("ALJ") decision that a *bona fide* loan did not exist between Massey and her daughter, who provided in-kind support and maintenance to her. In addition, Massey maintains that in arriving at this decision the ALJ employed incorrect legal standards. In contrast, the Commissioner contends that there is substantial evidence in the record to support the ALJ's decision that Massey did not enter into a *bona fide* loan agreement, that this decision comports with applicable law as the ALJ properly used the Social Security Ruling ("SSR") 92-8p guidelines, and that the ALJ's decision should therefore be affirmed.

II.   **Administrative Proceedings**

Massey applied for SSI benefits on January 16, 2002, claiming that she had been disabled since March 1, 1998, as a result of sarcoidosis, back pain, and high blood pressure. Massey, in her application, also claimed that she owned no type of resource and received no form of income. (Tr. 66-67).[2] The Social Security Administration approved Massey's application, and she was awarded SSI benefits retroactively to February 2000. (Tr. 17, 19-26). However, upon receiving her first SSI check in January 2004, Massey realized that her SSI benefit payment had been reduced by one-third (from $580 to $386). According to the Commissioner, the amount was reduced because of the food and shelter she received from her daughter, who at that time lived with Massey and who paid all the living expenses during the entire period in question, until Massey's daughter moved out in April 2005. (Tr. 17). On February 3, 2004, Massey requested reconsideration of the reduction in her SSI benefit amount and manner in which the benefits were calculated, but the Administration denied her request. Thereafter, Massey requested a hearing before an ALJ. The Administration granted her request and

---

[2] "Tr." refers to the transcript of the administrative record.

the ALJ, Harry L. Williams, Jr., held a hearing on May 16, 2005, at which Massey's claims were considered *de novo* (Tr. 17-18, 278-291). The ALJ, on July 19, 2005, issued a decision finding insufficient evidence to show the presence of a *bona fide* loan agreement. In addition, the ALJ found that Massey received in-kind support and maintenance ("ISM") from her daughter and that her SSI benefits had been properly reduced under the presumed value rule. (Tr. 10-18). The ALJ further found that, because Massey's daughter moved out of the household in April 2005, her SSI benefits should be fully restored as of May 2005. (Tr. 18).

Massey sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. *See* 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Massey's contentions pursuant to the applicable regulations and evidence, on October 25, 2007, the Appeals Council concluded that there was no basis upon which to grant Massey's request for review, at which time the ALJ's July 19, 2005, decision became final. (Tr. 6).

Massey filed a timely appeal of the ALJ's decision. Both Massey and the Commissioner filed Motions for Summary Judgment (Document Nos. 13 & 15). This appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a reduction in SSI benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

3

decision comports with relevant legal standards." *Bormey v. Schweiker*, 695 F.2d 164, 167-68 (5th Cir. 1983). Indeed, Title 42, Section 405(g) of the Act, limits judicial review of the Commissioner's decision as such: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. *See* 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety in order to decide whether the decision is supportable, the court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979); *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Accordingly, conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

As used in the Act, the U.S. Supreme Court has defined "substantial evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983)). Substantial evidence is defined as "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.    Burden of Proof**

An individual's eligibility for SSI benefits depends in part upon the income of the individual and the value of any resources owned by him or her. *See* 42 U.S.C. § 1382(a), § 1382c(a)(3)(A)-(C); 20 C.F.R. §416.110 and 416.1201. Although an SSI recipient is paid a flat monthly benefit, that monthly benefit is reduced by the amount of "income" the SSI recipient receives. *Hassbrock v. Barnhart*, 457 F. Supp.2d 736, 739 (S.D. Tex. 2006). "Income" is defined as "anything the individual receives in cash or in kind that the individual can use to meet her needs for food, clothing, or shelter." *Id*. Under the Act, loans are not considered "income" and cash is not considered "in-kind income." *Id*. "In-kind income" includes food, clothing, shelter, or something used to acquire those commodities. *Id*. In addition, "[i]n-kind income which is derived from someone else's payment of a recipient's food, clothing, or shelter" is considered in-kind support and maintenance." *Id*.

There are two rules for valuing in-kind support and maintenance: (1) the "presumed value rule," and (2) the "one-third reduction rule." *Id*. at 746. The Administration applies the presumed value rule when an SSI recipient receives both food and shelter from another person, but is not living in the household of that person. *Id*. at 740. Under the presumed value rule, the Administration presumes the in-kind income to be worth a maximum value, which is one-third the recipient's federal benefit rate plus $20. *Id*. The presumed value rule is a rebuttable presumption. Accordingly, an individual may present evidence that the actual value of the in-kind support at issue is less than the presumed amount. *See* 20 C.F.R. § 416.1140(a)(2).

The Administration applies the "one-third reduction rule" when an SSI recipient lives in the "household" of a person who provides the recipient with both food and shelter. *Id.* at 739. Instead of determining the actual dollar value of in-kind support and maintenance, under the one-third

reduction rule the Administration counts one-third of the federal benefit rate as additional income (regardless of its actual value). *Id*. Thus, the SSI recipient is subject to a one-third reduction in SSI benefits. *Id*.

The one-third reduction rule applies in full or not at all. *See* 20 C.F.R. § 416.1133. The rule does not apply when an individual pays a pro-rata share of the household expenses. *Id*. In addition, when in-kind support and maintenance is provided as a loan, it is not considered income and the one-third rule does not apply. *Hassbrock*, 457 F.Supp.2d at 739. Accordingly, an SSI recipient claiming the presence of a valid loan agreement has the burden of demonstrating that any in-kind support received was "loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt." *Hickman v. Bowen*, 803 F.2d 1377, 1382 (5th Cir. 1986). The Administration considers a loan to constitute an advance of either cash or in-kind support for which a household member is *obligated* to repay. *See* Social Security Ruling ("SSR") 92-8p (emphasis added).

Here, the ALJ found that Massey received in-kind support and maintenance from her daughter, and that upon application of the SSR 92-8p guidelines, Massey and her daughter had not entered into a *bona fide* loan agreement. In this appeal, the issues presented by Massey are: (1) whether there is sufficient evidence to show the presence of a *bona fide* loan agreement in this case; and (2) whether the ALJ properly applied the SSR 92-8P guidelines in determining that Massey and her daughter had not entered into a *bona fide* loan agreement.

In determining whether substantial evidence supports the ALJ's decision, the Court must apply the guidelines set forth in SSR 92-8p.[3] As stated in SSR 92-8p, for purposes of determining

---

[3] SSR 92-8p: Policy Interpretation Ruling Title XVI: SSI Loan Policy, Including Its Applicability To Advances of Food and/Or Shelter.

when a loan is not considered income and when a loan is considered a countable resource under the SSI program, the following policies apply:

1. A loan means an advance from a lender to a borrower that the borrower *must repay*, with or without interest.  A loan can be cash or an in-kind advance in lieu of cash.  For example, an advance of food or shelter can represent a loan of the pro rata share of household operating expenses.  This applies to any commercial or noncommercial loan (between relatives, friends, or others) that is recognized as enforceable under State law.  The loan agreement may be oral or written, as long as it is enforceable under State law.

2. Any advance an SSI applicant or recipient receives that meets the above definition of a loan is not income for SSI purposes since it is subject to repayment.  Any portion of borrowed funds that the borrower does not spend is a countable resource to the borrower if retained into the month following the month of receipt.

3. When money or an in-kind advance in lieu of cash is given and accepted based on any understanding *other than that it is to be repaid by the receiver*, there is no loan involved for SSI purposes.  It could be a gift, support payments, in-kind support and maintenance, etc., and must be treated as provided for in the rules applicable to such terms.

4. If there is a bona fide loan as defined in (1) above, there is a rebuttable presumption that the loan agreement is a resource of the lender for SSI purposes.  For example, an SSI applicant or recipient reports making a loan to a relative.  The loan agreement is oral.  The oral agreement is found to be binding under State law.  Accordingly, the loan is presumed to be a resource of the lender because it can be converted to cash if the lender calls for repayment from the borrower.  The lender can rebut this presumption by showing that the loan cannot be converted to cash - for example, because the borrower died without leaving an estate.

5. Money a lender receives as repayment of a loan (which meets the definition of a resource) reduces the outstanding loan balance and is considered a countable resource to the lender in as much as the repayment amount represents a return of part of the loan principle; i.e., the total value of the resource, which is the repayment amount plus the outstanding loan balance, remains unchanged.

6. Interest on a loan is counted as unearned income to the lender in the month of receipt and, if retained, is a resource as in (2) above.

(emphasis added).

7

**V. Discussion**

    **A. Evidence of a *Bona Fide* Loan**

Evidence must be obtained with respect to the existence of a *bona fide* loan agreement. *See* SSR 92-8p. It is undisputed that Massey had received in-kind support and maintenance from her daughter in the form of household expenses, food, and mortgage payments for the house in which they resided until April 2005, when Massey's daughter moved out. Thus, the sole issue in this case is whether Massey presented sufficient evidence to show that she and her daughter entered into a *bona fide* loan agreement to the effect that the support the daughter provided her constituted a loan within the meaning of SSR 92-8p.

As the SSI recipient, the burden of proof with respect to the showing of a *bona fide* loan was on Massey. In this case, Massey had an administrative hearing on May 16, 2005. Massey was represented by counsel and testified at the hearing. The transcript of the hearing reveals that the following testimony was adduced concerning Massey's contention that she had entered into a loan with her daughter:

| | |
|---|---|
| Q. | Ms. Massey, this will apply only back to January 2002. So let me ask you what your living arrangement has been since that time, January of 2002. What is your - what has your living arrangement - has it changed since then? |
| A. | No, its just recently changed. |
| Q. | I'm not - |
| A. | It just recently changed. My daughter moved out. |
| Q. | How long ago? |
| A. | About two weeks, two or three weeks ago. |

Q. Okay, so aside from that very recent change, if we disregard that for the moment, has your living arrangement changed since January of 2002?

A. Yes.

Q. Has it changed?

A. Yes.

Q. In what manner?

A. My daughter has moved out. Her and her child have moved out, and I live by myself.

Q. And when was that?

A. About three weeks ago?

Q. Is that the only change that's been made in that - since 2002?

A. Yes, sir.

Q. Okay, so when did you first start your living where you are now?

A. How long have I been living there?

Q. Yeah, what year was it in?

A. I moved there in 1997.

Atty: All Right.

ALJ: Say that - you moved in 1997?

CLMT: Yes, sir.

Atty: Did you work - were you employed until when? When were you employed?

CLMT: '99.

ALJ: Is this a house, apartment or mobile home?

CLMT: This is a house, sir.

9

ALJ: House? Okay, so you moved there in '97. So your daughter would have been 17 when you moved there?

CLMT: Yes, sir.

ALJ: And there wasn't any granddaughter involved?

CLMT: No, sir.

ALJ: Okay.

BY ATTORNEY:

Q. And you say you worked until what year?

A. '99.

Q. Okay, and you were self-supporting? Is that a fair statement-

A. Yes, sir.

Q. - until then?

A. Yes, sir.

Q. All right. Now, has your daughter, Chant'ee, been helping you since - at least since 2002 if not before? January of 2002?

A. 2002, she's been helping.

Q. What - approximately how much has your rent been?

A. Back then?

Q. Yes, ma'am.

A. It was lower than the amount that I'm paying now.

Q. How much are you paying now?

A.  I'm paying $544 now, and then it was less then, I think $60, $34, something like that. I can't remember.

Q.  So was it more than $400? Has it always been more than $400 a month?

A.  No, it just recently went up last year.

Q.  To what?

A.  $481 and $544.

Q.  Okay, and has your daughter been helping you with that rent?

A.  Yes, sir.

Q.  And how about food and other necessities? Has she been -

A.  Yes, sir.

Q.  - helping with that too?

A.  Yes, sir.

Q.  Well, I think that the - that what we have to talk about here today is whether you have intended to repay your daughter for this help that she's been giving you.

A.  Yes.

Q.  From what? What is your income now? I don't mean the amount, but where - what's the source of it?

A.  Just the SSI.

Q.  No other income?

A.  No other income?

ATTY:  Okay.

ALJ:  How are you going to survive, ma'am, if your daughter moved out with $540 a month for rent? And even if we find favorably for you here, you're going to be $560 minus Medicaid money.

11

CLMT: Yes, I'm going to have to go and talk to housing again and see if they will lower it, you know.

ATTY: Are you going to have to move? Is that what it amounts to?

CLMT: It might. I don't know.

ATTY: Smaller place.

CLMT: Yes, I think so.

ATTY: Okay, so - okay.


EXAMINATION OF CLAIMANT BY ALJ:

Q. Has the daughter been contributing a specific amount each month? Have you been splitting it or just you've just been making ends meet?

A. Been splitting it and making ends meet, sir.

Q. And why did your daughter move out three weeks ago?

A. She said it was time for her to get her own place and some other things and she wanted to do for her and her child.

Q. And where did she move?

A. Sir?

Q. Where did she move to?

A. Right now, she's staying with the baby's daddy's parents.

ALJ: Okay.


BY ATTORNEY:

Q. Okay, and it's been going on like that, making ends - you and your daughter making ends meet since '02?

12

A. Yes, sir.

Q. Does your daughter have a car?

A. Yes, sir.

Q. Does she work?

A. Yes, sir.

Q. Has she told you anything about her finances?

A. Well, prior to a car loan and the insurance and other things for her and her baby.

Q. Well, let me ask you this way. Is it a financial burden on your daughter to help you?

A. Yes.

Q. Okay, back in '02, did you have any savings back then?

A. No, sir.

Q. When you were not able to work?

A. No, sir.

Q. So you've been living from month to month since '02? Is that correct?

A. Yes, sir.

Q. Am I correct in that?

A. Yes, sir.

***

ALJ: Have you reported your change in living conditions to the Social Security office?

CLMT: No, sir, I hadn't got a chance to.

***

ALJ:     Are we sure that your daughter is not going to move back in with you?

CLMT: Yes.

ALJ:     You're not - she may move back in with you?

CLMT: No.

ALJ:     No, she will not?

CLMT: No, she will not.  (Tr. 280-286, 287, 288).

In addition, even though Massey's daughter, Chant'ee Massey did not testify in person, she provided a statement in which she indicated that she and her daughter, Breia N. Massey, had moved out of Massey's residence as of May 1, 2005. (Tr. 275).  Furthermore, in an earlier form signed and dated November 13, 2003, Chant'ee Massey wrote that she did not provide shelter for her mother and also that her mother had agreed to repay $5310.  (Tr. 241).  In the same form, Massey indicated that she had to repay her daughter "one way or the other" and her daughter indicated that "whenever her mother has funds to repay she can." *Id.*

Here, upon this record, Massey did not meet her burden of showing that the in-kind support provided by her daughter was pursuant to a *bona fide* loan agreement other than statements in unverified forms that an agreement existed.  Massey presented no evidence of an *actual* loan agreement, oral or written, between herself and her daughter, the nature of the loan agreement, the amount of the outstanding loan, when they entered the loan, what provisions were made for repayment of the loan, what type of repayment schedule had been agreed to, what actions Massey's daughter would take if Massey failed to repay the loan, or the amounts repaid by Massey thus far.

14

Massey knew little about her daughter's finances. *Compare Hassbrock*, 457 F. Supp. 2d at 738 (claimant presented a written loan agreement with the terms and conditions of the loan). Thus, a review of the evidence and testimony in the record shows that the ALJ's decision was well supported and that he applied SSR 92-8p guidelines. The ALJ, as was his province and obligation, weighed all the evidence and testimony in the record, and concluded that Massey presented insufficient evidence to show that a *bona fide* loan agreement existed between herself and her daughter. In justifying this decision, the ALJ wrote:

> At the hearing, the Claimant testified that she and her daughter have been splitting the rent and that her daughter moved out the middle of April 2005. She also stated that she had not reported these changes to the Social Security Administration.
>
> After careful consideration of the entire record, the Administrative Law Judge agrees with Social Security Administration that there does not appear to be a "business arrangement type loan" between the claimant and her daughter, see *Hickman v. Bowen*, 803 F.2d 1377 (5th Cir. 1986). However, the claimant's daughter moved out the middle of April 2005, and beginning May 1, 2005, the claimant has been solely responsible for paying her own food and shelter. (Tr. 18).

A review of the record indicates that Massey had the opportunity to present adequate evidence of an alleged *bona fide* loan agreement, but failed to do so. The ALJ, therefore, correctly applied *Hickman* and SSR 92-8p and found that Massey presented insufficient evidence to support the finding of a *bona fide* loan agreement. Thus, substantial evidence in the record supports the ALJ's decision.

## VI. Conclusion and Order

Considering the record as a whole, the Court concludes that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of reduced SSI benefits on these facts. *Bormey*, 695 F.2d 164. As the ALJ's decision was supported by substantial evidence and comports with applicable law, it is

ORDERED that Defendant's Motion for Summery Judgment (Document No. 13) is GRANTED, Plaintiff's cross Motion for Summary Judgment (Document No. 15) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas this 2nd day of July, 2008.

Frances H. Stacy
United States Magistrate Judge